[Cite as *Blackwell v. White House Fruit Farm, Inc.*, 2025-Ohio-1317.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

SYLVIANA M. BLACKWELL ET AL.,

Plaintiffs-Appellants,

v.

WHITE HOUSE FRUIT FARM, INC.

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0094**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2023 CV 01188

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Ilan Wexler* and *Atty. David M. Moore,* Anzellotti, Sperling, Pazol & Small Co., LPA, for Plaintiffs-Appellants and

*Atty. Gianna M. Calzola* and *Atty. Craig G. Pelini,* Pelini, Campbell & Ricard, LLC, for Defendant-Appellee.

Dated: April 10, 2025

**DICKEY, J.**

{¶1}   Appellants, Sylviana M. Blackwell ("Blackwell"), along with her husband, David Rodriguez, and their minor children, O.R. and S.R., appeal from the September 9, 2024 magistrate's decision, the September 11, 2024 judgment of the Mahoning County Court of Common Pleas, and the October 9, 2024 magistrate's order.

{¶2}   This is a premises liability case arising from a fall Blackwell suffered in the parking lot of Appellee, White House Fruit Farm, Inc. ("White House").  Blackwell, joined by her family members, filed a personal injury claim against White House and its unidentified agents and employees.  By unanimous written consent of all parties, a jury trial, along with all attendant issues and motions, were referred to a magistrate.  The magistrate sustained White House's motion for summary judgment, concluding the condition which caused Blackwell to fall was open and obvious.  The trial court adopted the magistrate's decision pursuant to Civ.R. 53(C)(2).

{¶3}   On appeal, Appellants assert the trial court erred in granting summary judgment in favor of Appellee.  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶4}   On May 17, 2022, Blackwell went to White House, located at 9249 Youngstown-Salem Road, Canfield, Mahoning County, Ohio.  White House owns the premises and owns and operates a retail farm market business.  Deborah Pifer ("Pifer") is White House's co-owner and market manager.  Wendy and Robert Lynn are Pifer's sister and brother-in-law, both White House assistant market managers.  Blackwell parked her car in the parking lot.  Prior to entering the store and while walking across the parking lot carrying her four-year-old son, Blackwell fell and was injured.

{¶5}   On June 21, 2023, Appellants filed a complaint against Appellee, White House and John Does 1-5, for negligence and loss of consortium.  Appellants alleged Blackwell was a business invitee when she fell as a result of encountering a hidden defect in the pavement of White House's parking lot.  Blackwell alleged she suffered a serious ankle fracture which required immediate medical attention and needed surgery.  White House filed an answer on July 14, 2023.

– 3 –

{¶6}   During her April 11, 2024 deposition, Blackwell admitted she had been to White House over ten times in the past and had walked the parking lot without incident. Blackwell never complained to White House on previous occasions nor notified White House during any of her prior store trips about any defects in the parking lot.  On the day at issue, Blackwell said White House was busy.  She carried her child because he had fallen asleep in the car.  Blackwell indicated she got her foot caught and fell.  She saw other people walking in the same area of the fall without issue.  Blackwell also saw a couple of passing cars.  The weather was sunny and clear.  The area of the parking lot where the fall occurred was neither covered nor obstructed in any way.  Nothing blocked Blackwell's view.  Blackwell could not identify what caused her to fall during her deposition.

{¶7}   On April 30, 2024, White House filed a motion for summary judgment.  On May 2, 2024, both parties filed a notice of consent for the magistrate to preside over this matter.  Five days later, the trial court issued a judgment indicating that the jury trial and all attendant motions were referred to the magistrate.  Following a telephone status conference, the magistrate filed an order extending case deadlines.

{¶8}   Appellants stress the defect in White House's parking lot was only visible while walking in one direction but not the other.  However, the record before us, including the depositions of Pifer and Robert and Wendy Lynn, does not support Appellants' allegation.

{¶9}   Appellants took the deposition testimony of Pifer on May 16, 2024.  In the area where Blackwell fell, which is in front of the market entrance, there are planters surrounded by concrete curbing that contain trees, other plant materials, and signs advertising sales.  At times, the trees will shade or cast shadows on the area.  As the incident occurred about two weeks before Memorial Day, the area in front of the market entrance gets congested with pedestrians and cars.  Pifer stated the parking lot asphalt is professionally maintained about once per year.  Pifer acknowledged it looked like a crack in the parking lot where Blackwell fell, but she did not know how long the crack was there.  Pifer said no one previously reported a crack or hole in the parking lot.  She never observed the area as being deteriorated.

{¶10} Appellants also took depositions of Robert and Wendy Lynn on June 27, 2024. Robert and Wendy were not aware of any complaints regarding the safety or condition of the parking lot prior to this incident. Robert indicated White House gets busier around lunchtime. Wendy filled out an incident report after Blackwell's fall revealing that the time of the fall was 1:00 p.m. (Exhibit 18). Robert and Wendy found Blackwell lying on the ground after she had fallen. Wendy said Blackwell told her she tripped while stepping in a hole in the parking lot. Robert described the area as an indentation or valley where the parking lot is not completely level. Robert and Wendy could see the height difference in some, but not all of the photographs that were admitted into evidence due to a zoomed-in angle or poor photo quality. Robert stated he did not know how long the indentation was there.

{¶11} In her affidavit, dated August 12, 2024, Blackwell referred to a letter from White House's insurance carrier revealing that Blackwell told the insurance carrier that she did not see a hole in the parking lot. (Exhibit 19). Blackwell indicated she stepped in a hole, lost her balance, and fell. The spot at issue was about midway between an older couple that were walking and the planter curbing as depicted in photographs. (Exhibits 10, 12).

{¶12} On August 15, 2024, Appellants filed a brief in opposition to White House's motion for summary judgment. White House filed a reply in support on August 21, 2024. Following a hearing, the magistrate filed a decision on September 9, 2024, sustaining White House's motion for summary judgment. The trial court adopted the magistrate's decision two days later.

{¶13} On September 24, 2024, Appellants filed objections to the magistrate's decision. On October 1, 2024, White House filed a reply in opposition. One week later, Appellants filed a motion to strike or in the alternative, Appellants' reply in support of their objections. Following a hearing, the magistrate issued an order on October 9, 2024, addressing all motions and ultimately finding that Appellants did not have a right to object to the magistrate's decision due to the parties' prior unanimous consent to the jurisdiction of the magistrate and the trial court's signed judgment of reference months before White House's motion for summary judgment and all memoranda contra. The magistrate found that Appellants' objections were a legal nullity.

{¶14} Appellants appeal from the September 9, 2024 magistrate's decision, the September 11, 2024 judgment of the trial court, and the October 9, 2024 magistrate's order, raising a single assignment of error. Appellants subsequently filed a motion to stay and remand which this court denied.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES.**

{¶15} In their sole assignment of error, Appellants contend the trial court erred in granting summary judgment in favor of Appellee. Appellants present the following issue for review: "By finding as a matter of law that the subject defect was 'open and obvious,' and that it was a 'minor or trivial imperfection,' and that no 'attendant circumstances' existed, did the trial court magistrate fail to construe the evidence most strongly in favor of Appellants as the non-moving party?" (2/5/2025 Appellants' Brief, p. i). Appellants stress White House had prior knowledge regarding the change in height in its parking lot.

{¶16} At the outset, we note that the parties' references to hole, crack, indentation, valley, and change in height are all used to describe the imperfection in White House's parking lot where Blackwell fell.

An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim

being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293, 662 N.E.2d 264. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267.

*Doe v. Skaggs*, 2018-Ohio-5402, ¶ 10-12 (7th Dist.).

In order to establish negligence, it is fundamental that the party seeking recovery must show the existence of a duty on the part of the one sued, failure to perform the duty, and that an injury resulted from this failure. *Linker v. Xpress Fuel Mart, Inc.,* 7th Dist. Mahoning No. 17 MA 172, 2018-Ohio-5404, ¶ 9. The issue of whether a duty exists in a negligence action is a question of law. *Laughlin v. Auto Zone Stores, Inc.,* 7th Dist. Mahoning No. 08 MA 10, 2008-Ohio-4967, ¶ 11.

*Watkins v. Alwishah*, 2021-Ohio-3589, ¶ 23 (7th Dist.).

<u>Case No. 24 MA 0094</u>

**{¶17}** In this case, Blackwell was White House's business invitee.

> "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Light v. Ohio University*, 28 Ohio St.3d 66, 68 (1986). Generally, a premises owner owes a business invitee a duty to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition. *Id.*; *Presley v. City of Norwood*, 36 Ohio St.2d 29, 31 (1973). "Keeping the premises in a reasonably safe condition generally means that a premises owner (1) must not create a dangerous condition on its premises, and (2) must warn its invitees of latent or concealed dangers, if the premises owner has actual or constructive knowledge of those dangers." *Ray v. Wal-Mart Stores, Inc.*, 2013-Ohio-2684, ¶ 18 (4th Dist.).

*Toth v. J.B. Food Serv., Inc.*, 2024-Ohio-3077, ¶ 18 (7th Dist.).

> But a business owner does not owe invitees a duty to warn of dangers that are open and obvious. *Armstrong v. Best Buy Co. Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5. "Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Id.* at the syllabus. That is because the owner may reasonably expect those entering the property to discover the dangers and take appropriate measures to protect themselves. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.2d 642, 644, 597 N.E.2d 504 (1992).

> . . .

> We are to look objectively at whether a particular danger is open and obvious, without regard to the injured plaintiff. *Hissong v. Miller*, 186 Ohio App.3d 345, 2010-Ohio-961, 927 N.E.2d 1161, ¶ 10 (2d Dist.). As such, the open-and-obvious test "'properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in

encountering it.'" *Id.*, quoting *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 13. . . .

. . .

Attendant circumstances can exist that distract a person from exercising the degree of care an ordinary person would have exercised in order to avoid the danger and can create a genuine issue of material fact as to whether a particular hazard is open and obvious. *Ellington v. JCTH Holdings, Inc.*, 7th Dist. Mahoning No. 14 MA 64, 2015-Ohio-840, ¶ 15. "To serve as an exception to the open and obvious doctrine, an attendant circumstance must be 'so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care an ordinary person would exercise.'" *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-541, 2010-Ohio-2774, ¶ 20, quoting *Cummin v. Image Mart, Inc.*, 10th Dist. Franklin No. 03AP-1284, 2004-Ohio-2840, ¶ 10. Attendant circumstances do not include regularly encountered, ordinary, or common circumstances. *Colville v. Meijer Stores Ltd.*, 2d Dist. Miami No. 2011-CA-011, 2012-Ohio-2413, ¶ 30, citing *Cooper v. Meijer*, 10th Dist. Franklin No. 07AP-201, 2007-Ohio-6086, ¶ 17.

*Perry v. Anshu, LLC*, 2021-Ohio-2365, ¶ 12, 14, 21 (7th Dist.).

{¶18} "There is a paramount duty upon a pedestrian to look where he may be walking." *Backus v. Giant Eagle, Inc.*, 115 Ohio App. 3d 155, 158 (7th Dist. 1996).

The owners or occupiers of private premises are not insurers of the safety of pedestrians traversing those premises, and minor or trivial imperfections therein, which are not unreasonably dangerous and which are commonly encountered and to be expected, as a matter of law do not create liability on the part of such owners or occupiers toward a pedestrian who, on account of such minor imperfection, falls and is injured.

*Helms v. Am. Legion, Inc.*, 5 Ohio St. 2d 60, syllabus (1966).

{¶19} The instant case is analogous to the premises liability action in *Ward v. Wal-Mart Stores, Inc.*, 2001-Ohio-4041 (11th Dist.). In *Ward*, the appellant filed a complaint seeking recovery for injuries she sustained after falling in Wal-Mart's parking lot. *Id.* at * 1. The appellant, a frequent patron, arrived on a sunny afternoon to shop at the store. *Id.* She tripped on a pothole and fell in the parking lot. *Id.* The appellant did not see the pothole, although nothing was obstructing her view of the pavement. *Id.* The trial court granted Wal-Mart's summary judgment motion. *Id.* Our Sister Court agreed with the trial court and affirmed. *Id.* at * 4.

{¶20} The Eleventh District determined the following: the appellant admitted her familiarity with Wal-Mart's parking lot as she was a frequent patron; the weather was clear and sunny; nothing impeded the appellant's view of the pothole; and any alleged distraction by other people and cars merely describes normal conditions found in most parking lots. *Id.* The court found the appellant's claim was precluded by the open and obvious doctrine and that the trial court did not err in granting summary judgment in favor of Wal-Mart. *Id.*

{¶21} Like *Ward*, Blackwell in the case at bar was familiar with White House's parking lot as she was a frequent patron; she had previously walked the area, never complained, and never had an issue; the incident happened in the afternoon; the weather was clear and sunny; nothing impeded Blackwell's view of the hole, crack, indentation, valley, or change in height in the parking lot; and any alleged distraction by other people, cars, or signage merely describes normal conditions found in most parking lots. In addition, Blackwell chose to carry her child into the store. This decision was not controlled or created by White House.

{¶22} Appellants suggest that the shade, i.e., darkness, from a potted tree cast a shadow which hindered Blackwell's ability to see the defect in the parking lot. Even if so, however, darkness is an open and obvious condition. *Mayhew v. Massey*, 2017-Ohio-1016, ¶ 18 (7th Dist.).

{¶23} Based on the facts presented and the record before us, White House did not owe a duty to Appellants because they were business invitees. *See Toth*, 2024-Ohio-3077, at ¶ 18 (7th Dist.). It is clear that the imperfection where Blackwell fell in White House's parking lot was open and obvious. No attendant circumstances existed to negate

the open and obvious doctrine.  Accordingly, the trial court properly granted summary judgment in favor of White House.

## CONCLUSION

**{¶24}**  For the foregoing reasons, Appellants' sole assignment of error is not well-taken.  The September 9, 2024, September 11, 2024, and October 9, 2024 decisions and judgments of the Mahoning County Court of Common Pleas are affirmed.

Waite, J., concurs.

Hanni, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgments of the Court of Common Pleas of Mahoning County, Ohio, are affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**